NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 14, 2012[*]
Decided March 29, 2012

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-1549

| | |
|---|---|
| MYCHAL THOMPSON,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>GLADYSE TAYLOR and NEDRA<br>CHANDLER,<br>    *Defendants-Appellees.* | Appeal from the United States District<br>Court for the Northern District of Illinois,<br>Eastern Division.<br><br>No. 10 C 7380<br><br>Frederick J. Kapala,<br>*Judge.* |

**O R D E R**

Mychal Thompson, an inmate at the Dixon Correctional Center in Illinois, appeals the dismissal of his action under 42 U.S.C. § 1983, alleging that prison conditions resulting from existing and future overcrowding violate the Eighth Amendment. We affirm.

---

[*]The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Thompson's complaint alleged overcrowded cells and "deplorable" conditions in his particular unit at the prison ("Unit 61") and warned that plans to add inmates would exacerbate those conditions. These conditions, he says, already include an inadequate number of toilets and showers, exposed electrical wiring, leaky ceilings covered with mold and mildew, emergency exits in disrepair, and no evacuation procedures. When he filed his complaint in late 2010, there were allegedly about 110 inmates in his unit, with plans to add around 60 more the next year.

The district court screened Thompson's complaint, *see* 28 U.S.C. § 1915A, and dismissed it for three reasons. First, Thompson lacked standing to challenge overcrowding that had not yet occurred. Second, Thompson alleged that he was merely "in the process of exhausting administrative remedies" and therefore had filed suit prematurely. Third, he failed to disclose his complete litigation history, specifically a prior lawsuit (also about overcrowding) in which he was assessed a "strike" under 28 U.S.C. § 1915(g) for failure to state a claim, despite certifying to the court that the information he had supplied was true; in the court's view, Thompson's omission amounted to a "fraud" on the court, and the appropriate sanction was dismissal with prejudice.

On appeal, Thompson first attacks the decision that he lacked standing to challenge current overcrowding and the inevitable addition of more inmates, and he notes that a contingent of new inmates did arrive in summer 2011. Thompson's allegations about future overcrowding are insufficient to establish an injury in fact, a requirement for standing, s*ee Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 146–47 (7th Cir. 2011); *Goldhamer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010), and that the prison did later increase the Unit 61 inmate population does not change this result, because standing must exist at the commencement of litigation. *See Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010); *Pollack v. United States DOJ*, 577 F.3d 736, 743 n.2 (7th Cir. 2009).

The district court did, however, overlook Thompson's allegations of *current* overcrowding and other "deplorable" conditions, but this is inconsequential because the district court supported its decision with two other reasons. First, Thompson cannot show that his failure to exhaust his administrative remedies should be excused. He argues that his failure to exhaust administrative remedies before filing suit is excusable because prison officials impeded his ability to exhaust—namely, by refusing to give him the necessary forms to appeal to the Administrative Review Board. It is true that a grievance process is not "available" for exhaustion purposes if prison officials prevent its use, *see Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004), but here grievance procedures were available. Thompson acknowledges in his brief that the Board responded to his grievance even without the

necessary forms, and did so within about two months after he submitted his initial grievance (well within the suggested six-month period, s*ee* 20 ILL. ADM. CODE § 505.850(f).)

Second, he cannot show that the district court clearly erred by determining his certification of his litigation history was fraudulent or abused its discretion in sanctioning him with dismissal. He argues that he did not intentionally misrepresent his litigation history to the district court, asserting that his omission was an oversight because he was never assessed filing fees nor did he receive an order from the court disposing of that uncited case. *See Thompson v. Cook Cnty.*, No. 1:01-cv-7124 (N.D. Ill. Oct. 23, 2001). But the court did not err in determining that Thompson's misrepresentation was fraudulent and grounds for dismissal. *See Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011). A district court relies on a litigant's description of his litigation history in managing its docket, including any possible application of the three-strike requirement of 28 U.S.C. § 1915(g). Further, as the court noted, the civil-rights complaint form that Thompson submitted to the court warned—in capital letters—that a party's failure to describe additional lawsuits filed may result in dismissal of the case. The court here adequately justified its decision to sanction Thompson with dismissal of his action. *See Hoskins*, 633 F.3d at 543–44.

**AFFIRMED**.