In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-1290

FABIAN GREYER,

*Plaintiff-Appellant,*

*v.*

ILLINOIS DEPARTMENT OF CORRECTIONS, *et al*.

*Defendants-Appellees.*

_____

No. 18-1458

MICHAEL JOHNSON,

*Plaintiff-Appellant,*

*v.*

JASON DALKE, *et al*.

*Defendants-Appellees.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Western Division.
Nos. 17 C 7840, 17 C 50384 — **Philip G. Reinhard**, *Judge.*

_____

ARGUED APRIL 3, 2019 — DECIDED AUGUST 13, 2019

_____

Before WOOD, *Chief Judge*, and BAUER and ROVNER, *Circuit Judges*.

WOOD, *Chief Judge*. One of Congress's expressed goals when it passed the Prison Litigation Reform Act ("PLRA") was to rein in the flood of prisoner litigation—all too often frivolous or vexatious, it thought—clogging the courts. See Margo Schlanger, *Inmate Litigation*, 116 HARV. L. REV. 1555, 1633–34 & nn. 269–70 (2003) (citing *Porter v. Nussle*, 534 U.S. 516, 525 (2002); and 141 CONG. REC. 514, 627 (daily ed. Sept. 29, 1995) (statement of Sen. Hatch)). Of the many tools the law introduced to serve that purpose, one of the most potent is the so-called "three strikes" provision. See 28 U.S.C. § 1915(g). The statute specifies that a prisoner may not proceed *in forma pauperis* if she "has, on [three] or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted …." *Id.*

So far, so good. But no legislation spells out everything, and the PLRA is no exception. Our concern here is with the way in which courts administer the three-strikes rule. Many have created elaborate forms requiring prisoner-litigants to list their entire litigation histories. The Northern District of Illinois's form, which is the one at issue here, requires the prisoner to furnish all of the following information:

- name of case and docket number;

- date of filing;

- all plaintiffs for each case, including co-plaintiffs and their aliases;

- all defendants for each case;

- the court in which each lawsuit was filed;
- the name of the assigned judge;
- a description of the claim(s) made;
- the disposition of the case; and
- the date of disposition.

NORTHERN DISTRICT OF ILLINOIS, Complaint Under the Civil Rights Act, Title 42, Section 1983 U.S. Code, or Complaint Under the Constitution ("Bivens" Action), Title 28 Section 1331 U.S. Code (federal defendants), https://www.ilnd.uscourts. gov/_assets/_documents/_forms/_online/1983EDForm092007 .pdf. By collecting this information, a district court reviewing an indigent prisoner's complaint can ensure itself that the prisoner plaintiff has not "struck out."

But this solution has created at least two new problems: first, prisoners may not be the most reliable narrators of their litigation history; and second, there is a serious question whether the district court has created a "local rule imposing a requirement of form" that cannot be "enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." See FED. R. CIV. P. 83(a)(2). We focus on the first of these, as the parties have not briefed the second. Even prisoners with no incentive to lie often do not have ready access to their litigation documents and may not remember all of the details of their cases. The form, however, appears to be oblivious to these practical problems. The Northern District of Illinois sternly warns prisoners that "REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE." *Id.* (capitalization in original).

The two cases now before us, which we have consolidated for disposition, are about the enforceability of that threat.

## I

### A

On October 20, 2017, Fabian Greyer, an inmate at Illinois's Dixon Correctional Center, filed a suit in the Western Division of the Northern District of Illinois. He alleged that several actions by prison officials had violated his constitutional rights, including fondling and sexual harassment by a correctional officer, retaliation for using the grievance system, and refusal to place him in protective custody. When he filled out the litigation-history portion of his form complaint, Greyer attested that he had not "begun any other lawsuits in state or federal court relating to [his] imprisonment." As we noted, the form warned that "[f]ailure to comply with this provision may result in summary denial of your complaint." Greyer's statement, in the district court's opinion, was inaccurate. By the time his complaint was filed, he had been involved in two other lawsuits in federal court. The first was his habeas corpus petition, which he filed in 2007. See *Greyer v. Chandler*, No. 07-CV-2010 (C.D. Ill. Jan. 22, 2007). The second was another civil suit filed on the same day he filed the present action. See *Greyer v. Ill. Dep't of Corr.*, No. 17-CV-1133 (S.D. Ill. Oct. 20, 2017). Neither of those cases qualified as a "strike" under the PLRA, and it is undisputed that had he disclosed them, Greyer could have proceeded with this suit *in forma pauperis*. He therefore had nothing to gain from hiding these suits from the district court.

The court nevertheless issued a show-cause order requiring Greyer to explain why he had omitted these cases from his

litigation history, and why the court should not dismiss this case as a sanction for fraud on the court. Greyer explained in response that he suffers from mental illness and as a result he takes psychotropic medications. Additionally, his capacity to read and write is extremely limited. Because of his literacy problem, he has had to recruit other prisoners to help him prepare his filings in this case. He manages this by bartering his food for legal aid. Critically, his near illiteracy prevents him from being able properly to "asses[s] what has been written for him." Greyer concluded his explanation with a renewed plea for recruited counsel, stating that he was in "dire need" of a lawyer's help.

The district court made no findings about the truth or falsity of Greyer's statements. It found his answers non-responsive to the "straightforward question requiring a simple answer" posed by the show-cause order. Accordingly, the district court dismissed the case with prejudice as a sanction for fraud on the court, citing *Hoskins v. Dart*, 633 F.3d 541 (7th Cir. 2011). The judge made no explicit findings about whether Greyer's omissions were either intentional or material, as required for a finding of fraud. See *id*. at 543.

B

Our other case comes from Michael Johnson, another Dixon inmate, who filed his complaint on December 18, 2017, alleging numerous unconstitutional conditions of confinement. He too filed a motion to proceed *in forma pauperis*. Johnson has a rather extensive prison-litigation history, most of which he included (or attempted to include) on the litigation-history form included with his complaint.

That form required Johnson to "[l]ist ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court (including the Central and Southern Districts of Illinois)." In response, Johnson listed varying amounts of information about eight earlier suits that he had filed. While he was able to give full information about his most recent and still-pending cases, the other case information sheets are riddled with holes. For example, Johnson listed one case as having been filed "in 2014 or 2015." Another he stated was filed in "U.S. District Court ???"; he could not remember the name of the assigned judge. And that was not his only lapse: in four of the eight cases Johnson listed, there was some piece of required information that he expressly stated he could not remember.

The district court, however, was on the job. It identified three cases that it believed were missing from Johnson's list: *Turner v. Wexford*, No. 13 CV 3072 (C.D. Ill. Mar. 14, 2013); *Johnson v. Bennett*, No. 14 CV 1210 (C.D. Ill. Apr. 14, 2016); and *Johnson v. Dalke*, No. 17 CV 50265 (N.D. Ill. Nov. 6, 2017). Noting the number of cases Johnson had filed while imprisoned, the district court believed that Johnson was an experienced litigant who should have known not to leave *any* cases off the required form. Because of these omissions, the district court ordered Johnson to show cause why his suit should not be dismissed with prejudice as a sanction for fraud on the court.

Johnson responded that he simply forgot about the cases the district court identified, and their omission was a simple mistake. He also objected to the district court's characterization of himself as an "experienced" litigant, arguing that he did not know how to litigate cases, but had turned to the courts when he thought that others had violated his rights.

Johnson's lack of know-how is corroborated by the level of success he has had in his prior lawsuits—zero. While Johnson has never incurred a strike, he also never has won relief in any of his cases, identified or unidentified. In his response, Johnson also revealed another case, *Johnson v. Haenitsch*, No. 17 CV 50383 (N.D. Ill. Dec. 18, 2017), which he had filed on the same day as this case.

The district court saw nothing in Johnson's response that warranted discharging the rule to show cause. It reiterated that Johnson's past cases made him an experienced litigant and that he thus must have understood the importance of providing complete information to the court. It found that the (now four) omitted cases were filed at or around the same time as other cases Johnson had listed, or around the time of the present complaint, and thus Johnson should have remembered and included them. In order to "send a strong message about the obligation to be truthful, ethical, and forthright" before the court, the court concluded that dismissal with prejudice was an appropriate sanction. It thought that Johnson's omissions were intentional, but it made no explicit findings explaining why the omissions were material. See *Hoskins*, 633 F.3d at 543.

Both Greyer and Johnson timely appealed the district court's dismissal of their cases. We recruited counsel to assist them on appeal and invited an *amicus curiae* to defend the defendants' position, as no defendant was served prior to the dismissal of either suit. We thank all counsel for their excellent advocacy.

## II

There is no doubt that courts have the power to dismiss a lawsuit with prejudice as a sanction when a party violates a discovery rule or disobeys a court order that allows the court to control its docket or manage the flow of litigation. *Hoskins*, 633 F.3d at 543. As we said in *Hoskins*, that power applies with equal force to the situation before us, in which a prisoner fails to list her complete litigation history despite a complaint form that calls for such disclosure. *Id*. at 544. Because district courts have broad discretion in fashioning sanctions against litigants, we review their factual findings for clear error and their choice of which sanctions to impose for an abuse of discretion. *Id*. at 543.

But a court's sanctioning power is not unbounded. Many sanctions are authorized by the rules of civil procedure. See, *e.g.,* FED. R. CIV. P. 37(b) (discovery violations); 16(f) (failure to obey a scheduling or other pretrial order); 41(b) (dismissal for failure to comply with rules or court order). In the cases now before us, however, the district court seems to have relied on its inherent authority. The Supreme Court repeatedly has "cautioned that the use of inherent powers should be 'exercised with restraint and discretion.'" *Trade Well Int'l v. United Cent. Bank*, 778 F.3d 620, 626 (7th Cir. 2015) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991)). The court's inherent sanctioning powers are "subordinate to valid statutory directives and prohibitions." *Law v. Siegel*, 571 U.S. 415, 421 (2014). Courts must also evaluate the appropriateness of any given sanction, especially the "draconian" sanction of dismissal with prejudice. See *Barnhill v. United States*, 11 F.3d 1360, 1367–69 (7th Cir. 1993) (describing dismissal with prejudice as a "draconian," "severe," "harsh," "powerful," "serious," and

"extreme" sanction for a party's "contumacious" miscon-
duct). As we have stressed, in all but the most extreme situa-
tions courts should consider whether a lesser sanction than
dismissal with prejudice would be appropriate. See *Oliver v.
Gramley*, 200 F.3d 465 (7th Cir. 1999) (collecting cases). Most
importantly, courts must make factual findings that ade-
quately support any use of their inherent sanctioning powers.

The question here is whether Greyer and Johnson commit-
ted fraud on the court through their omissions, and in partic-
ular whether those omissions were both intentional and ma-
terial. *Hoskins*, 633 F.3d at 543. The district court's brief orders
do not address those points. In Greyer's case, the court said
nothing about intentionality or materiality, and it is hard to
infer such findings from what it did discuss. In Johnson's case,
while the court indicated its belief that his omissions were in-
tentional, it offered no explanation for why those omissions
were material.

## A

The district court believed that Greyer's reply to its show-
cause order was unresponsive to the question why he had
omitted his litigation history. But, taken in context, that is ex-
actly what Greyer addressed. While Greyer never specifically
said "I did not list those cases because …," he did fully explain
the circumstances that led to the omissions. When viewed in
the liberal light in which we must take *pro se* pleadings, see
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Greyer's explanation
for his failures is plain: his mental health issues and illiteracy
created a situation in which he did not fully understand what
was being asked of him, and thus the omissions were inad-
vertent.

And that is not all. A lawyer might have thought that both of the cases Greyer omitted fell outside the scope of the request in the form. Whether a habeas corpus petition is a case "relating to [one's] imprisonment" (in the sense of conditions of confinement), as opposed to the validity of the conviction or sentence, has been the subject of attention in the Supreme Court for years. See, *e.g.*, *Skinner v. Switzer*, 562 U.S. 521 (2011); *Wilkinson v. Dotson*, 544 U.S. 74 (2005); *Heck v. Humphrey*, 512 U.S. 477 (1993); *Preiser v. Rodriguez*, 411 U.S. 475 (1973). This is especially important in the current setting, because habeas corpus petitions do not give rise to a strike under the PLRA. See *Walker v. O'Brien*, 216 F.3d 626, 633–34 (7th Cir. 2000) (holding that "if a case is properly filed as an action under 28 U.S.C. §§ 2241, 2254, or 2255, it is not a 'civil action' to which the PLRA applies."). Understandably, someone with no legal training might not draw the conclusion that he must include his habeas corpus petition on a list of cases "relating to [his] imprisonment." And Greyer's other lawsuit had not yet "begun" when he filled out the PLRA form, as it was filed contemporaneously with this case.

The district court's apparent conclusion that Johnson's omissions were intentional is similarly based on erroneous factual conclusions. Granted, Johnson omitted two earlier cases that he should have included on the form: *Johnson v. Bennett*, No. 14 CV 1210 (C.D. Ill. Apr. 14, 2016); and *Johnson v. Dalke*, No. 17 CV 50265 (N.D. Ill. Nov. 6, 2017). Nonetheless, neither one gave rise to a strike: Johnson voluntarily dismissed *Bennett* after surviving a motion to dismiss on exhaustion grounds; and he voluntarily dismissed *Dalke* after successfully getting beyond the screening process. The other two missing cases identified by the district court—*Turner v. Wexford*, No. 13 CV 3072 (C.D. Ill. Mar. 14, 2013); and *Johnson v.*

*Haenitsch*, No. 17 CV 50383 (N.D. Ill. Dec. 18, 2017)—appear not to fall within the scope of the question on the form. It seems that Johnson was not even a plaintiff in *Turner*. Although his name was listed on the court's docket, he did not sign the complaint or take any other action to suggest that he wished to be a part of that case. The court in *Turner* realized that Johnson (as well as another person apparently named by Turner) had not done anything to suggest that they wished to be involved in that lawsuit and dismissed them immediately. It is not sanctionable conduct to fail to list a case into which one was conscripted when the instruction is to list cases that one has "filed." Nor did *Haenitsch* meet the description of the cases for which the form required disclosure. It requested information only about cases that were "filed," and *Haenitsch* had not yet been filed with the district court when Johnson swore to the form's accuracy.

Given these errors, the record as it now stands does not contain enough evidence to support the district court's belief that Johnson intentionally omitted those four cases. That finding is also undercut by Johnson's frank admission on the form that he did not remember all the information about his past cases. On every case that was not currently active, Johnson responded to at least one of the form's questions with either question marks or an explicit statement that he could not remember the requested information. It is not a great leap to think that Johnson may have unintentionally forgotten a couple of prior cases.

B

Even if, for the sake of argument, we were to assume that the district court's findings about Greyer's and Johnson's intent are not clearly erroneous, the court erred by failing to

make a ruling on materiality in each of these cases. Materiality is a context-specific inquiry, but "[u]nder any understanding of the concept, materiality 'look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.'" *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2002 (2016) (quoting 26 R. Lord, Williston on Contracts § 69:12, p. 549 (4th ed. 2003) (Williston)); see also *Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 250 (2014) (materiality of a falsehood depends on "the identity of the relevant reader or listener," but that identity "varies according to context").

Although we know that an omission must be material before a district court may sanction a litigant by dismissing her case with prejudice, we have not yet had the occasion to discuss what makes an omission material for purposes of section 1915(g). As usual, however, we begin with the maxim that "[i]t is not a judge's job to add to or otherwise re-mold statutory text to try to meet a statute's perceived policy objectives." *Fourstar v. Garden City Group, Inc.*, 875 F.3d 1147, 1152 (D.C. Cir. 2017) (Kavanaugh, J.). Thus, while Congress hoped that the PLRA would lessen the amount of baseless prison litigation, it is the courts' job only to implement the statute.

The text offers guidance about the meaning of materiality for this purpose. Two provisions of the PLRA detail the district court's role in screening prisoner complaints. 28 U.S.C. § 1915(g) states that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States

> that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Relatedly, 28 U.S.C. § 1915(e)(2) outlines situations that "shall" lead to dismissal "at any time if the court determines" that they obtain: first, if "the allegation of poverty is untrue," and second, if the action or appeal is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. See also 28 U.S.C. § 1915A (requiring mandatory screening of prisoner complaints).

We can deduce what materiality must mean from these provisions. If an undisclosed past case was dismissed as frivolous, malicious, or failed to state a claim (*i.e.*, it was or should have been a strike), then omission of that case is material. An omitted past case would also be material if it has significant factual overlap with the currently-filed case, because that could suggest the current case is frivolous or malicious. See *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (noting that maliciousness in this context means an intent to harass an opposing party). But there are other possibilities that the statute does not address: cases that have no bearing on eligibility for *in forma pauperis* status; or cases that are not frivolous or malicious; or cases that escaped wholesale dismissal for failure to state a claim, see *Turley v. Gaetz*, 625 F.3d 1005, 1012 (7th Cir. 2010) (no strike when one of several claims is dismissed); or cases that did not attempt to recover from someone with immunity.

It is notable that in the majority of cases in which we have affirmed dismissal either with or without prejudice, the problem was a material failure to disclose—that is, a failure to reveal a case that led to a strike, or that demonstrated that the prisoner had already struck out. See, *e.g.*, *Ozsusamlar v. Szoke*, 669 F. App'x 795, 796 (7th Cir. 2016); *Postlewaite v. Duncan*, 668 F. App'x 162, 163–64 (7th Cir. 2016); *Ramirez v. Barsanti*, 654 F. App'x 822, 823 (7th Cir. 2016); *Thompson v. Taylor*, 473 F. App'x 507, 509 (7th Cir. 2012); *Sloan v. Lesza*, 181 F.3d 857, 858 (7th Cir. 1999); see also *Jackson v. Fla. Dep't of Corr.*, 491 F. App'x 129, 132 (11th Cir. 2012).

The one exception to this pattern appears to be *Hoskins*. But in that case Hoskins had simultaneously filed five civil rights complaints, and on each complaint form he failed to disclose "three [prior] federal civil rights cases *on similar claims*, all of which he was *still litigating*." *Hoskins*, 633 F.3d at 543 (emphasis added). Instead, Hoskins stated on every form that he had no litigation history at all. Although none of Hoskins's undisclosed cases were strikes, they involved "similar claims" as his current suits and so some of the five later-filed suits may have been "frivolous or malicious." 28 U.S.C. § 1915(e)(2); *Lindell*, 352 F.3d at 1109. We found no abuse of discretion on those facts in a dismissal with prejudice. *Hoskins* also illustrates one final point: district courts remain empowered to sanction extreme bad-faith conduct. Nonetheless, they should proceed carefully before imposing severe sanctions on prison litigants who omit portions of their litigation histories, if those omissions do not add strikes and thus have no bearing on the prisoner's ability to proceed under the PLRA.

Turning back to the appeals before us, we have no trouble concluding that none of the cases omitted by Greyer or Johnson meet the applicable standards for materiality. Greyer's lone prior case was a habeas corpus petition and thus not one that could yield a strike; the other case identified by the district court had not yet begun when Greyer swore to the accuracy of this complaint. And as we have explained, all but two of Johnson's omitted cases were either not strikes, were contemporaneously filed, or did not actually involve him. While Johnson technically should have mentioned the remaining two, his failure to do so was not material, as he had dismissed both of those cases voluntarily after favorable rulings. It is notable that neither Greyer nor Johnson has accumulated any strikes throughout his time litigating in the federal courts.

C

In the PLRA context as elsewhere, it is essential to distinguish between a negligent, reckless, or even willful act, on the one hand, and a fraudulent act, on the other. A finding of fraud opens a litigant to additional and heightened penalties and thus requires a showing of fraudulent intent. (Fraud allegations also trigger a more demanding pleading standard, see FED. R. CIV. P. 9(b).)

In contracts, for example, a party might intentionally breach a contract, even in a "widespread" or "systematic" way, but in a manner that is not necessarily fraudulent. *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399–400 (7th Cir. 2011). A finding of fraud requires "that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract." *Id.* at 399. The difference between an intentional breach and a fraudulent "deception at the time the promise is made," *Corley v. Rosewood Care Ctr., Inc. of Peoria*,

388 F.3d 990, 1007 (7th Cir. 2004), can be the deciding factor between civil and criminal liability. See, *e.g.*, *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650 (2d Cir. 2016) (overturning findings of mail and wire fraud violations for "selling poor-quality mortgages to government entities" because there was no evidence of deceptive intent at the time of contracting).

In the law of torts, a fraudulent misrepresentation can lead to an expanded array of damages. An innocent or negligent misrepresentation gives rise only to liability for "the difference between the value of what the other has parted with and the value of what he has received in the transaction." Restatement (Second) of Torts § 552C (1977). But a fraudulent misrepresentation allows a plaintiff to recover "benefit of the bargain" damages as well. *Id.* § 549; see also *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 274 (7th Cir. 1996) ("Where a misrepresentation induced the victim to consummate the bargain, benefit-of-the-bargain damages are appropriate to give the victim the rewards he reasonably expected under the contract.").

The distinction between negligence and fraud is just as important for the PLRA as it is for the laws of contract or torts. When appropriate, the district courts must ensure that a prisoner's negligent or even reckless mistake is not improperly characterized as an intentional and fraudulent act.

## III

Twenty years ago, this court lamented that "[t]he federal judiciary needs (but lacks) a central database of litigants to whom § 1915(g) applies." *Sloan*, 181 F.3d at 858. Since that

time, recordkeeping has improved, though it is still not perfect. The district courts have commendably developed forms to facilitate the handling of *pro se* litigation filed by prisoners and nonprisoners alike. The courts must ensure, however, that those forms stay within the boundaries of Rule 83 (*i.e.* that they do not add burdens beyond those authorized in the statute for litigants). The forms also need to be realistic: prisoners are constantly complaining that their legal papers have been confiscated or lost, and it seems likely that this happens from time to time. Perhaps something as simple as a catch-all question would avoid the problems we have seen here: "While you were incarcerated or detained in any facility, have you filed any case in any court of the United States that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief can be granted? List all such cases that you can remember and indicate the court where they were filed to the best of your ability." The answer to such a question would give the crucial information: has this person struck out, for purposes of proceeding *in forma pauperis*, or not? It would also reveal, if the new case is dismissed on one of those grounds, whether the person has accumulated another strike.

*\*\*\**

In each of the two cases before us, the district court rested its conclusion that the plaintiffs committed fraud on flawed factual findings and an overly broad view of what constitutes a material omission. For that reason, we VACATE the sanctions orders against both Greyer and Johnson and REMAND the cases to the district court for further proceedings consistent with this opinion.