[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10908

Non-Argument Calendar

_____

LEE F. ADAMS,

Plaintiff-Appellant,

*versus*

M. TODD,
Registered Nurse,
M. THOMPSON,
Licensed Practical Nurse,
CENTURION OF FLORIDA,
Medical Provider,

Defendants-Appellees,

JOHN DOE,

                                                          Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-00140-CEM-DCI

_____

Before JILL PRYOR, BRANCH, and MARCUS, Circuit Judges.

PER CURIAM:

Lee Adams, a prisoner at the Tomoka Correctional Institution, appeals from the district court's dismissal with prejudice of his § 1983 complaint alleging that two nurses and the prison medical provider had been deliberately indifferent to his serious medical needs. The district court dismissed the complaint for two reasons: because Adams had failed to state a claim and because he had filled out an incomplete litigation history on his form complaint. After careful review, we affirm in part and vacate and remand in part.

I.

The essential facts according to Adams's amended complaint are these. On January 6, 2020, Adams submitted a sick call request to the Tomoka medical department, complaining of rectal bleeding and severe pain. He was seen by nurse Todd, who

examined him and saw lumps and bleeding. Adams told Todd he was in excruciating pain and asked to see a doctor, but Todd refused to refer him to a doctor and refused to provide him with any pain medication.

A month later, Adams returned to the medical department for his "worsening condition." This time, he saw nurse Thompson. Thompson also noted a "growth in [Adams's] genital area," but told Adams there was nothing he could do about it. Thompson hypothesized that the growth was probably from a sexually transmitted disease and asked Adams if he'd had sex with another male prisoner. Adams said he had not. Thompson, "upon hearing [Adams's] remarks[,] dismissed him, and refused him further treatment." Adams believes that Thompson denied him treatment because he thought Adams was lying about not having had sex with a man; and that Todd, too, refused him treatment because she was prejudiced against gay men and believed Adams to be gay.

Ten days later, Adams was transferred to Lake Butler Medical Center for unrelated reasons. Nevertheless, the medical staff at Lake Butler treated Adams's rectum and, on April 13, he had surgery to eliminate the growth. Adams alleges that, due to the Tomoka medical department's earlier denial of treatment, he suffered permanent scarring to his rectum as well as unnecessary pain.

Proceeding *pro se*, Adams brought a 42 U.S.C. § 1983 suit in the United States District Court for the Middle District of Florida against the two nurses, Todd and Thompson, and Centurion of Florida ("Centurion"), Tomoka's medical provider who employed

the two nurses.  Adams proceeded as an incarcerated plaintiff *in forma pauperis* under the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915.  In the complaint, Adams alleged that the Defendants were deliberately indifferent to his serious medical condition in violation of the Eighth Amendment.  He also alleged that Centurion had instructed its employees to ignore Adams's medical problems and that Centurion had a custom and policy of allowing nurses to deny prisoners adequate medical attention when the required procedures would cost the company money.

The district court dismissed Adams's original complaint without prejudice as inadequately pleaded and instructed him to submit an amended complaint.  The court directed Adams in bolded underlined text to "list all pertinent previous lawsuits in the appropriate section of the complaint," and warned him that "[f]ailure to list all such prior cases . . . may result in the dismissal of this action without further notice."  Adams filed an amended complaint.

Adams filed both his complaints on the standard form used by *pro se* plaintiffs who are in custody, pursuant to the district court's Local Rules.  *See* M.D. Fla. L.R. 6.04(a)(3).  Among other things, the form asks if the prisoner-plaintiff has ever "filed other lawsuits . . . relating to the conditions of [his] imprisonment" and, if yes, to "describe each lawsuit" by answering some follow-up questions.  In both his original and amended complaints, Adams checked the box for "yes," indicating that he had filed other lawsuits relating to the conditions of his imprisonment.  In his original

complaint, he wrote that he had "filed a previous issue some years ago based on excessive use of deadly force that had been dismissed for failure to state a claim that was refilled [sic] due to corrections in middle district."  In his Amended Complaint, Adams named himself as a party to the suit; wrote "Settled case" under the date of disposition; and as for the question about the result of the case, wrote "Unknown."

The record contains additional details about Adams's litigation history.  It turns out that in 2014, Adams had sent a letter to the Middle District of Florida's Clerk of Court, asking the Clerk to enter an injunction housing him at another correctional facility because, he said, an officer at his previous facility had beaten him and caused him to fear for his life.  The court construed the letter to "initiate[] a case," noted that Adams had "failed to file a complaint," and dismissed the case "without prejudice to Plaintiff's right to properly initiate a civil rights action."  In 2016, Adams filed a complaint using the proper form, making claims that arose out of the same events that prompted his 2014 letter and naming additional defendants.  Following a settlement conference, the parties stipulated to dismissing the case with prejudice, which the court did.

After Adams filed his Amended Complaint in the instant case in 2021, the Defendants moved to dismiss it.  They argued that Adams had failed to state a claim on which relief may be granted, and, in the alternative, that he had failed to disclose his full litigation history by listing only *one* prior case in the complaint.  The district court dismissed with prejudice on both grounds: (1) that

Adams failed to state a claim because he had not alleged an objectively serious medical need, nor shown how the nurses had caused his injuries, nor had he alleged that Centurion had engaged in a pattern of constitutional violations; and (2) that Adams's failure to disclose his two prior lawsuits constituted a "misrepresentation of his litigation history," which "warrant[ed] dismissal of this action for abuse of the judicial process."

Adams timely appealed and is now represented by counsel.

## II.

We review *de novo* a dismissal under the PLRA for failure to state a claim, viewing the allegations in the complaint as true. *Hughes v. Lott*, 350 F.3d 1157, 1159–60 (11th Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* We construe *pro se* pleadings more liberally than those drafted by attorneys. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

We review the dismissal of a case as malicious under the PLRA for abuse of discretion. *Daker v. Ward*, 999 F.3d 1300, 1307 (11th Cir. 2021). The abuse-of-discretion standard allows the district court a range of choice, but we will reverse if the court has made a clear error of judgment or applied the wrong legal

standard. *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc). We've emphasized that a "[d]ismissal with prejudice is a drastic remedy to be used only in those situations where a lesser sanction would not better serve the interests of justice." *See Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993) (quotations omitted). Therefore, a dismissal with prejudice under the PLRA generally is inappropriate unless the district court finds both that there is a clear record of delay or willful misconduct and that lesser sanctions are inadequate. *See Camp v. Oliver*, 798 F.2d 434, 438 (11th Cir. 1986); *see also Zocaras*, 465 F.3d at 483 (involving sanctions under Fed. R. Civ. P. 41(b)). "Mere negligence or confusion does not rise to the level of willful misconduct." *Zocaras*, 465 F.3d at 483.

## III.

We begin with Adams's argument that the district court erred in dismissing his complaint with prejudice under the PLRA on the ground that the complaint failed to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). As we'll explain, Adams's claims against Centurion and against the nurses in their official capacities were properly dismissed with prejudice, but his claims against the nurses in their individual capacities were not. We reach this conclusion based only on the allegations in his amended complaint, so we need not resolve the parties' dispute over the viability of the allegations in the original complaint.

The Eighth Amendment protection against cruel and unusual punishment requires the government "to provide medical care for those whom it is punishing by incarceration," since "[a]n inmate

must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To state a claim for deliberate indifference to a serious medical need under § 1983, a plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). As we've recently clarified, "in addition to an 'objectively serious' deprivation [set forth in the first prong], a deliberate-indifference plaintiff must show [under the second prong] that the defendant acted with 'subjective recklessness as used in the criminal law.'" *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)).

Here, the district court dismissed Adams's individual claims against the nurses on the ground that he had not alleged the requisite facts to meet the first and third prongs of a deliberate indifference claim: a serious medical need and causation. The Defendants address only those two prongs of the deliberate indifference test on appeal.

As for the first prong, the district court found that Adams's allegations of rectal lumps, rectal bleeding, and excruciating pain -- which resulted in permanent scarring to and disfigurement of his rectum -- failed to state an objectively serious medical need. We disagree. For starters, we've held that the mistreatment or lack of treatment of severe pain can form the basis for a deliberate

indifference claim. *See Brown v. Hughes*, 894 F.2d 1533, 1537–38 (11th Cir. 1990) (per curiam) (holding that a delay in treating a "serious and painful broken foot" stated a deliberate indifference claim); *Aldridge v. Montgomery*, 753 F.2d 970, 972–73 (11th Cir. 1985) (finding a dispute of fact as to whether officers were deliberately indifferent when they "failed to administer any ice or medication for [Plaintiff's] pain"); *see also Estelle*, 429 U.S. at 103 (recognizing that the "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose"). Here, Adams alleged that he endured "severe" and "excruciating" pain, while, for nearly six weeks, the nurses refused to refer him to a doctor, take lab work, or even prescribe pain medication.

These allegations do not simply describe a "routine" problem, as the Defendants argue. "The test for seriousness includes whether the need is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007) (quotations omitted). A layperson would surely recognize the need to see a doctor when a person has growths around his genitals, is bleeding from his rectum, and is in excruciating pain. *See Hinson v. Bias*, 927 F.3d 1103, 1122 (11th Cir. 2019) ("[S]evere pain that is not promptly or adequately treated can present a serious medical need."); *cf. Brown*, 894 F.2d at 1538 n.4 (collecting cases and noting that a "recent traumatic injury," like a beating and sexual assault, automobile accident, soft-tissue shoulder injury, or one-and-a-half inch bleeding cut, is generally sufficient to demonstrate a serious medical need).

The district court faulted Adams for failing to "describe the quantity of blood or the size of the lumps or growth," or "which symptoms worsened or how, or any physical limitations caused by his symptoms." But what we require at the motion-to-dismiss stage is a "short and plain statement of the claim." *Iqbal*, 556 U.S. at 677 (quoting Fed. R. Civ. P. 8(a)(2)). While facts cannot be stated in a conclusory manner, "detailed factual allegations" may not be required. *Id.* (quoting *Twombly*, 550 U.S. at 555). The allegations of lumps, rectal bleeding, and severe pain are not conclusory; they are allegations of specific facts about Adams's medical condition, and they satisfactorily set forth the serious medical need prong of his deliberate indifference claim.

As for the third prong of the deliberate indifference test, the district court also erred in finding that Adams had failed to allege that the nurses caused his injuries. Our inquiry into causation focuses on "whether an official's acts or omissions were the cause -- not merely a contributing factor -- of the constitutionally infirm condition." *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993). A plaintiff may establish a "causal connection . . . by proving that the official was personally involved in the acts that resulted in the constitutional deprivation." *Id.* (quotations omitted). To decide whether the official caused the injury, we ask whether he "was in a position to take steps that could have averted the [injury] but, through deliberate indifference, failed to do so." *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 622 (11th Cir. 2007) (cleaned up).

Adams sufficiently alleged causation.  He expressly said that his severe pain and permanent scarring came from his rectal injury. And he said that both nurses were in a position to avert that injury: they could have prescribed him medicine to alleviate his extreme pain, or referred him to a doctor, or ordered lab work for possible treatments.  *See id.*  Each nurse was "personally involved" in the decision not to treat him -- he saw them for treatment, they had the ability to take action, and they opted not to do so.  *LaMarca*, 995 F.2d at 1538.  It was the denial of treatment, Adams alleges, that prolonged his severe pain and left him with permanent scarring to his rectum.  Because these allegations are sufficient at the pleading stage, the court erred in dismissing the individual claims against the nurses.[1]

That said, the district court properly dismissed with prejudice Adams's claims against Centurion and against the nurses in their official capacities, which are functionally claims against

---

[1] The Defendants claim that Adams "must allege the delay caused him to suffer an 'increased physical injury.'"  But that's only true in cases "that turn on the delay in providing medical care, rather than the type of medical care provided."  *Goebert*, 510 F.3d at 1327.  Where a plaintiff claims that defendants denied him medical care altogether, the test is simple: whether the plaintiff alleged "causation between [the defendants'] indifference and the plaintiff's injury."  *Mann*, 588 F.3d at 1307; *see also Bingham*, 654 F.3d at 1176 (differentiating between "[a] complete denial of readily available treatment" and a "delay[] [in] necessary treatment").  Adams does not claim that the nurses delayed treating him; rather, he alleges that the nurses completely denied him medical treatment for non-medical reasons, and that he did not receive any treatment until his transfer to another medical facility for unrelated reasons.

Centurion.  *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Pompey v. Broward County*, 95 F.3d 1543, 1545 n.2 (11th Cir. 1996) (treating § 1983 claims against county officials in their official capacities as claims against the county, and affirming the dismissal of both).  A private entity like Centurion may be sued under § 1983 as the "functional equivalent of [a] municipality" when it "contracts with a county to provide medical services to inmates" and thereby "performs a function traditionally within the exclusive prerogative of the state."  *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quotations omitted).  To succeed, "[b]ecause municipalities rarely have an official policy that endorses a constitutional violation," a plaintiff must prove that the private entity "had a 'policy or custom' of deliberate indifference that led to the violation of his constitutional right."  *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  "A pattern of similar constitutional violations . . . is 'ordinarily necessary.'"  *Id.* (quotations omitted).  "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees . . . ."  *Id.* at 1311.

Adams alleges that: (1) nurse Thompson told him that the "chief medical officer would not spend any money on getting him surgery," and (2) the nurses "denied him care for suspiciously similar reasons that appear more rooted in animus toward Mr. Adams for his perceived sexual behavior rather than any desire to provide proper medical care."  But a plaintiff's own experience of several prison employees denying him medical care for a single injury

counts as "[p]roof of a single incident of unconstitutional activity," not "a series of constitutional violations from which deliberate indifference can be inferred." *Id.* at 1312 (quotations omitted) (holding that a claim that "nine medical providers evaluated him sixteen times over nine days before referring him to a physician" constituted a single incident, not a pattern of constitutional violations).

Thus, Adams's allegation that two nurses denied him treatment for one medical complaint, standing alone, is not enough to show a policy or custom of Centurion's that violated § 1983. Though we construe *pro se* pleadings liberally, "a pro se pleading must suggest (even if inartfully) that there is at least some factual support for a claim." *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015). Adams has not provided that factual support here; the district court did not err in dismissing with prejudice Adams's claims against Centurion and against the nurses in their official capacities.

## IV.

Because we conclude that the district court should not have dismissed Adams's action against the two nurses in their individual capacities for failure to state a claim, we also must address Adams's argument that the district court abused its discretion in dismissing his entire complaint with prejudice on the alternative ground that he failed to fully apprise the court of his litigation history. Under the PLRA, a district court may dismiss an action -- other than for failure to "state a claim on which relief may be granted" -- if it determines that "the allegation of poverty is untrue," or that "the

action . . . is frivolous or malicious" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). These options are exhaustive -- a district court may not dismiss for any reason not listed and may not expand the listed reasons beyond their plain meaning. *Miller v. Donald*, 541 F.3d 1091, 1099 (11th Cir. 2008); *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Although the district court did not specify the PLRA prong under which it was dismissing Adams's complaint based on his "misrepresentation of his litigation history," the only prong that could fit is dismissal for a "malicious" action. *See* 28 U.S.C. § 1915(e)(2)(B)(i). In dismissing for maliciousness, the district court need not "invoke any magic words" or even use the word "malicious." *Daker v. Comm'r, Ga. Dep't of Corr.*, 820 F.3d 1278, 1284 (11th Cir. 2016) (citing *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998) (discussing the "frivolous" and "malicious" prongs of § 1915), *abrogated in part on different grounds by Bock*, 549 U.S. 199). Nonetheless, we've noted that "such language certainly aids our review." *Id.*

We must point out, however, that not every prisoner's misstep is "malicious" under the PLRA. In this context, we've equated "malicious" with "bad faith" or "manipulative tactics." *See Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997) (reviewing an action dismissed as malicious under what is now § 1915(e)(2)(B)(ii) for "bad faith litigiousness or manipulative tactics"). So, in *Attwood*, we affirmed a dismissal based on the plaintiff's "history of bad faith litigiousness and deceit," which included "sixty-one claims in the

District Court for the Southern District of Florida alone" and "equal[] litigious[ness] in the Northern District of Florida." *Id.*

Meanwhile, in the case of a plaintiff who misrepresented his indigent status, another basis for dismissal under § 1915(e)(2), we've said that courts should not "punish litigants whose affidavits contain *insignificant* discrepancies." *Matthews v. Gaither*, 902 F.2d 877, 881 (11th Cir. 1990) (emphasis added); *see also Camp*, 798 F.2d at 436–38 (reversing a dismissal with prejudice the district court had based on the plaintiff's answer that he had no funds in his prison bank account, which actually had $63.65, and noting that while he had been inaccurate, there was "no finding of bad faith, litigiousness or manipulative tactics"). Similarly, the Supreme Court has sanctioned dismissal under the PLRA "if *in forma pauperis* litigation is attempted for reasons that may genuinely be characterized as the litigant's 'bad faith.'" *Coppedge v. United States*, 369 U.S. 438, 445 (1962) (involving a dismissal for frivolousness); *see also Greyer v. Ill. Dep't of Corr.*, 933 F.3d 871, 881 (7th Cir. 2019) (persuasive authority) (stressing that, for PLRA dismissals, "district courts must ensure that a prisoner's negligent or even reckless mistake is not improperly characterized as an intentional and fraudulent act").

The district court here found that Adams had "abuse[d] . . . the judicial process," because he "knows that he filed [an] earlier action, and yet he fails to acknowledge it, even after the Defendants brought the action to his attention in the Motion to Dismiss." It based this finding on a partial omission Adams made in his litigation history on the form complaint -- that is, he listed a prior case

from 2016, but not one from 2014 -- and his "fail[ure] to acknowledge" that omission in his district court briefing when he insisted that he *had* disclosed his prior litigation by checking "yes" in response to the question of whether he had filed other lawsuits.

However, the district court did not support its finding that Adams had "abuse[d] . . . the judicial process" with any evidence of "bad faith litigiousness or manipulative tactics" or other maliciousness. *Attwood*, 105 F.3d at 613.   Nor does anything emerge from the record.  The "earlier action" the district court refers to consisted of a single letter Adams sent to the district court clerk in 2014 asking for help, prompting the court to issue an order refusing to grant an injunction because he had "failed to file a complaint" and had not "properly initiate[d] a civil rights action."  But it is hardly evident that Adams, as a layperson, understood this interaction to be a "lawsuit," nor, moreover, that it was separate from the 2016 action he actually pursued on the *same* alleged excessive use of force.

If anything, the record indicates that Adams thought he was being transparent with the court when he answered "yes" on the form that he had filed previous lawsuits.  In his original complaint in the instant action, Adams said that he had "filed a previous issue some years ago based on excessive use of deadly force" that he "refilled [sic] due to corrections in middle district."  It's not clear from this statement whether he thought he had previously filed just one lawsuit -- either when he attempted to initiate a complaint in 2014 and then refiled it in 2016 or only when he filed an original and amended complaint in the 2016 action -- but either way, it does not

23-10908                Opinion of the Court                17

support the finding that he intentionally misrepresented his litigation history.  Nor did he have a history of failing to disclose his litigation history.  *Cf. Matthews*, 902 F.2d at 881 (finding it noteworthy that "[t]here . . . was no finding that Matthews had previously misrepresented his assets in order to obtain *in forma pauperis* status").[2]

Further, Adams had nothing to gain from filling out his litigation history incompletely.  This is not a situation in which he had three strikes against him and would've been prevented from filing this case due to the PLRA's three-strikes rule.  That rule bars an incarcerated plaintiff from bringing a civil action *in forma pauperis* if he has, three or more times, while incarcerated, brought an action that was "dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).  Neither Adams's 2014 nor 2016 lawsuits counted as a strike under § 1915(g): the 2014 lawsuit was dismissed for failure to file a complaint, failure to comply with Rule 65, and failure to proceed *in forma pauperis* or to pay a filing fee, and

---

[2] The Defendants appear to have inaccurately represented Adams's litigation history.  In their brief, the Defendants claim that Adams has a "pattern and practice of not listing his litigation history," citing two cases in which a plaintiff, also named Lee Adams, did not disclose our Plaintiff's litigation history. *See Adams v. Miller*, Case No. 3:22-cv-01358-HES-PDB (M.D. Fla.); *Adams v. Fla. Dep't of Corr.*, Case No. 3:23-cv-00502-MMH-MCR (M.D. Fla.).  But those cases appear to belong to a different Lee Adams: a search of Florida's Corrections Offender Network, a publicly available database, shows that these are two separate individuals, with different birthdates and different prisoner numbers, serving different sentences, for different crimes, housed at different facilities.

the 2016 lawsuit was dismissed pursuant to a joint stipulation of the parties.  Thus, there is little reason to believe that Adams intentionally omitted his litigation history in order to avoid this case being dismissed under the three-strikes rule.  *Cf. Matthews*, 902 F.2d at 881 (also finding it noteworthy that "[t]here is no evidence that the misstatement was made in bad faith in order to qualify Matthews for *in forma pauperis* status when he was not entitled to that status").

In short, the district court did not squarely find "malice," nor did it support its dismissal of Adams's case with any evidence of "bad faith litigiousness or manipulative tactics," nor did it give us any clues to "aid[] our review."  *See Daker*, 820 F.3d at 1284; *Attwood*, 105 F.3d at 613.[3]  This is particularly significant since the district court opted to dismiss Adams's complaint *with prejudice*, which we've said is not usually appropriate under the PLRA absent a clear record of delay or willful misconduct and a determination that lesser sanctions are inadequate.  *Camp*, 798 F.2d at 438 (noting that "[w]e perceive no reason why a more stringent rule regarding dismissals with prejudice should apply to petitions for *in forma pauperis*, many of which are brought *pro se* by persons with little legal acumen," as opposed to other dismissals); *Zocaras*, 465 F.3d at 483

---

[3] The district court also cited Rule 11 as another basis on which it could impose sanctions.  But the court made no finding that Adams's omission was "in bad faith for an improper purpose," as required for a Rule 11 dismissal, *see Gulisano v. Burlington, Inc.*, 34 F.4th 935, 941–42 (11th Cir. 2022) (quotations omitted), so Rule 11 does not justify the dismissal any more than the PLRA does.  In any event, the Defendants did not raise this matter in the instant case.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014).

(finding "[m]ere negligence or confusion" insufficient for a dismissal with prejudice). In fact, the Defendants in this case only asked the district court to dismiss the case *without* prejudice in their motion to dismiss, and again, on appeal, suggest in the alternative that we remand and instruct the district court to dismiss this action without prejudice.[4]

On this record, we find it necessary to "vacate the judgment of the court below dismissing [Adams's] section 1983 petition with prejudice" and remand for the district court to clarify whether Adams's conduct was "malicious" or taken in "bad faith," whether a dismissal with prejudice is warranted, and, if so, why a lesser sanction would not suffice. *Camp*, 798 F.2d at 439.

## V.

Accordingly, we affirm the district court's dismissal with prejudice of Adams's complaints against the nurses in their official capacities and against Centurion. We vacate the judgment of the court as it relates to Adams's claims against the nurses in their individual capacities, and we remand for further proceedings consistent with this Opinion.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

---

[4] We note that even if this action were dismissed without prejudice, Adams still would be prejudiced because it would count as a strike against him in the future for purposes § 1915(g)'s three-strikes rule.